1794, NantKwest v. Iancu, Ms. Lilley, whenever you're ready. Good morning, Jamie Lilley for the United States Patent and Trademark Office. Your Honors, the panel correctly concluded that NantKwest must pay all expenses of the 145 proceeding that it elected, including the PTO's personnel expenses. Congress, in adopting the language in the statute, embraced the broad term expenses that there is no meaningful dispute includes attorney's fees or personnel expenses, and clarified which of those expenses it meant to include all of the expenses. You said there's no meaningful dispute with respect to whether expenses covers attorney's fees or not. Isn't there enough in the record to establish there is some ambiguity in terms of the coverage of expenses? No, Your Honor. The term expenses, as the Supreme Court has said in Taniguchi and Congress has stated in various statutes, the ordinary meaning includes the word attorney's fees. Now, in this case, where the statute applies to the USPTO, it doesn't have attorney's fees or doesn't engage in fee arrangements with its counsel. It has personnel expenses. It employs attorneys in the solicitor's office who perform the work of the PTO. That's the point, isn't it? They don't have attorney fees. Exactly, Your Honor. And so Congress, when it specified which expenses, specified all expenses. It would be passing strange, as the panel explained, for Congress to have used the word attorney's fees to describe expenses that can only be claimed by the PTO that doesn't have private fee arrangements with outside counsel. It did in 1839, didn't it? Your Honor? It did in 1839, apparently, hire outside counsel. Your Honor, we noted in our brief that there's some indication that the PTO paid for counsel in a couple of cases, or may have paid for counsel in a couple of cases, but PTO has not had an outside fee arrangement that would be typically described as attorney's fees. At the time of the 1839 statute, there wasn't within the office a lawyer position, was there? The solicitor position was established much later, in the 20s, I think. You may be right, Your Honor, but the expenses provision, as in 1836 Congress made clear, was the language of expenses included the salaries of the PTO staff members. And so Congress sensibly, three years later, when it added the expenses provision, used the language expenses, which it had used three years earlier, to describe PTO salaries, to include the expenses of PTO that would include salaried expenses related to 145 actions. Including patent examiners? Your Honor, in the 145 actions, there would be no reason to claim patent examiner expenses when we're talking about proceedings in the district court. If it's so clear, why did it take the PTO until the last couple of years to tumble on this supposedly unambiguous reading? Your Honor, as we explained in our brief, following Congress's mandate that the PTO become a fully user-funded agency, PTO, and this Court's decision in Hyatt, and the Supreme Court's decision, it meant that these proceedings were going to be more complicated and more expensive. PTO took a look at its funding sources and decided that it made it a priority to claim PTO's personal expenses. Are you saying when the taxpayers were paying your fees, you had no obligation to seek them, but when the applicants would be paying your fees, now you suddenly need to go seek them? Your Honor... You just said when we turned into a self-funding agency. Before that, who was paying the expenses of the agency? You're correct that before PTO claimed the expenses of the proceeding, that it would be paid by either other users or taxpayers beforehand. So the statute has said for 170 years, all the expenses of the proceeding shall be paid by the applicant. Yes, Your Honor. That is not discretionary, correct? No, Your Honor, but the PTO... So the PTO didn't have the discretion, if the statute included attorney's fees, the PTO did not have the discretion to not seek attorney's fees because the statute is mandatory, not discretionary. Your Honor, the statute... So now you're telling me that when we suddenly switched to user fee-based, fully, no longer funded by taxpayer dollars, but when we needed to finally support ourselves, we decided to comply with the mandate in the statute that we seek attorney's fees? No, Your Honor. Your Honor, were that we decided not to? No, Your Honor. There was no decision based on the user-funded nature of the agency encouraged the agency to look more carefully at its user fees, and in doing so, and in light of Hyatt... Didn't the agency become user-funded in the 80s? Partially so, Your Honor, but in the AIA, Congress made clear that the aggregate estimated cost of operating the agency should be borne by user fees, and so the agency sensibly examined all of its user fees and its costs, and in doing so, and in light of this Court's decision in Hyatt, anticipated more complexity, more expense... Do you agree, since it wasn't mandatory, and your reading of the statute now is all expenses of the preceding shall be paid by the applicant, do you now agree that the agency was in error for the last 170 years when it failed to seek attorney's fees? Your Honor, the language of the statute is clear that it should be paid. And yet, for 170 years, the agency didn't comply with what it now views as its interpretation... Well, the language of the statute, Your Honor, says the applicant shall pay them, so now the agency did not seek those fees from the applicant so that there hasn't been a violation. There's been no request that an applicant pay them that the applicant has not. But you're right, Your Honor, we didn't request them before. But you made a mistake earlier. We're not going to defer your interpretation of this particular statute. We don't owe you any Chevron deference. We are not arguing for deference over this interpretation of the statute, and we've been very clear, Your Honor, that after the AIA and Hyatt, we have taken a closer look at the statute, and the agency is now clearly seeking the expenses that it's entitled to under the exception. And plaintiff's argument... I guess my problem isn't a matter of giving you deference for your interpretation. It's more a matter of whether or not the fact that you failed to seek fees for 170 years reflects the fact that you didn't appreciate the language of the statute including attorneys' fees. And as such, maybe that actually really does suggest that the statute is ambiguous and not so clear, since the agency itself didn't interpret it as including attorneys' fees for 170 years. Maybe that goes to the ambiguity. Your Honor, we have not claimed the fees in the past, and that's not in dispute, and there may be various reasons for that. I can't speak to why the agency may or may not have in the past, but what is clear is that the language authorizes the agency to seek these personnel expenses and that the agency has done so. What I don't understand is what I asked you before. If the AIA mandates that you be completely user-funded, why isn't the cost of a patent examiner or the cost of Xeroxing or the cost of parking part of the fees that you're seeking in this case? Well, Your Honor, the language of 145 indicates that the agency can only recoup the expenses of the proceeding, by which we mean the 145 proceeding. Doesn't that all rise in the proceeding? Well, Your Honor, the agency does recoup the fees of patent examiners and of PTAB judges in the form of fees that users pay to use those proceedings, and this provision is no different. As the Supreme Court said in Gandy v. Marble, these 145 proceedings are an extension of the patent application. So like the application fee that a user pays in the initial instance for a patent examination or for a proceeding before the PTAB, the user pays for... It's not cost as cost or no. Yes, Your Honor. So how about the price for driving to the courthouse or taking a taxi?  The price for PTO attorneys driving to the courthouse? Well, Your Honor, there may be circumstances in which those sorts of expenses are expenses of the proceeding. You may be aware that recently in 145 actions, PTO attorneys had to travel to Texas to participate in a 145 trial, and we think that those expenses... Sometimes costs include a travel expense. But you should be saying always. We should be saying always. Certainly at a minimum, we think that those... Are they going to turn into a profit-making enterprise? Well, we are certainly not going to turn into a profit-making enterprise, Your Honor, and we have only sought the actual expenses that PTO incurred in defending the proceeding that NandQuest elected here, just as Congress... Can you cite to any other provision, any other circumstance, in which a loser can recoup their attorney's fees? Your Honor, it's highly unusual, and as the Fourth Circuit found, that was one of the features that the Fourth Circuit relied on in determining that this isn't... When you say highly unusual, is your answer no? You can't think of any other? You haven't found any other circumstances? Other than the user fees that NandQuest paid to PTO in order to apply for the patent that was rejected. Those are fees that apply win or lose. When it applies, when it seeks review in the PTAB, it pays those fees... But that's not a win or lose proposition. I mean, I didn't think that the PTO viewed itself as adversary to applicants when it's reviewing the application. That's kind of an absurd statement. Well, Your Honor, the fees, like the Supreme Court said in Vandy v. Marble, these proceedings are very analogous to the patent examination process, and indeed an extension of that process. And like the fee you pay, win or lose, for a patent application at the outset, you pay these expenses, win or lose, before the district court. And that's what 145 requires. NandQuest's position is that other PTO users should pay those expenses, and that is directly contrary to what Congress provided in Section 145. How are the salaries that are paid to the staff attorneys, how are they treated within the budget, the PTO budget, in terms of GS&A? Are they an operating cost? Are they expensed out? Your Honor, I take it that you're asking the question about the budgeting and the allocation of costs for other user fees. No, for the staff attorney, the salaries paid to your staff attorneys, how are they treated? In the solicitor's office, those are salary expenses. So it's a cost. It is an expense of the PTO. Is there any profit margin factored into any of those costs? No, Your Honor, the PTO does not recoup profits in the private sector sense of that term. Is it part of the record in this case how much money was paid on an hourly basis? We all are familiar with hourly charges of attorneys, how that was calculated in this case and what the result was. Yes, Your Honor, that in this case, the PTO has requested the pro rata portion of the salary expenses. So PTO submitted the annual salaries of the two attorneys and one paralegal who worked on this 145 proceeding and recorded the number of hours that they expended time working on this proceeding. Did counsel ever receive bonuses during a fiscal year? If they did, Your Honor, I don't believe that they were counted in the pro rata share of the salary expenses here. The answer is counsel do, can get a bonus. Isn't that correct? Possibly so, Your Honor. Some government attorneys do. I don't know whether these particular attorneys received bonuses. No, in general, there's a policy that allows for bonuses to be awarded. That sounds right, Your Honor. Why aren't they expensed in? You're saying that if PTO attorneys received bonuses in the general course, whether a share of those could be expensed as expenses of the proceeding? Or in this particular instance? Your Honor, if those were determined... You thought they did a really good job? That we could award those expenses? Well, I think that PTO could sensibly claim any expenses that were attributable to the proceeding and then the district court could review in the usual course whether those expenses were expenses of the proceeding and whether they were reasonable in this case. Do you all keep timesheets, detailed timesheets, as in the private sector, case by case, that you work on in the solicitor's office? There is time accounting, and those records... Day by day, by every eight-minute break or whatever it is? I don't believe that it's an accounting system exactly along those lines, but the PTO submitted time accounting sheets that reported the time that its attorneys expended. At the time that it spent, or at the time in retrospect after the case is over? The records would reflect the time expended on the matter. Are you saying that contemporaneous... Yes or no, are contemporaneous timesheets kept for every item that every lawyer works on? I know that in this matter, Your Honor, the PTO... Yes or no? In this matter, yes, the PTO submitted... Contemporaneous timesheets were kept by every lawyer who worked on this matter that is assessing the charge? By the two attorneys and one paralegal here submitted timesheets indicating the time. I think the question is not whether they submitted timesheets. Do they keep time in the course of a day? If they get a phone call related to that, do they put the phone down and then mark, you know, spoke with Joe, point two? For 145 actions, yes, that they do keep those actions in real time. For other matters, I can't speak to whether those... So for this case, contemporaneous timesheets have been produced... Yes, Your Honor. ...for exactly who worked on what at the time? Yes, and those were submitted to the district court in this case, so that the PTO has claimed the personnel expenses for the time that PTO devoted to this matter and that those attorneys were diverted from pursuing the other work of the PTO. Are those sheets in the record before us? Yes, Your Honor. And what was the hourly rate, do you recall, if that's in the record? It is in the record, and, Your Honor, I think it's roughly around $100 an hour. I could come up with the more specific rates because it depends on the particular attorneys and paralegals' salaries. Can you clarify something I may have misunderstood? You started the argument by talking about how the particular attorneys that are at issue here are salaried employees of the PTO. Yes, Your Honor. Is your view that 145 applies differently to the allocated share of their salaries, on the one hand, and an out-of-pocket PTO expenditure on private attorneys hired for the purpose of litigating, if there were such? As the panel pointed out, and we pointed out in our brief, the same logic would apply. PTO does not have authority or retain private counsel, but the notion that PTO salaried attorneys should be able to recoup the costs and the expenses of performing... I guess I thought I was hearing, and maybe I won't say this clearly enough, a suggestion that even if you could not get 145 reimbursement of out-of-pocket payments to private attorneys hired to conduct your litigation on the defense side of a 145 action, that even if you couldn't do that, you can get what you're seeking here, maybe because we wouldn't consider those attorney's fees at all, but just internal salary expenses. Was I hearing that distinction correctly or not? Your Honor, I take it your question goes to our argument that the word expenses includes personnel expenses for salaried government attorneys, and that attorney's fees would have been an odd phrase to use in the context of an expense recruitment provision that applies only to salaried government attorneys. And that was our only point, Your Honor, is that PTO doesn't retain outside counsel, and so the phrase expenses applies most naturally in this particular context. But at the time the statute was passed, it appeared that you did retain outside counsel for some of these cases. That would be included within the term expenses, too, wouldn't it? Yes, Your Honor, as we've said, that attorney's fees would be included as that term is understood under the language of 145. I think you have a hard time saying that in 1839 it was contemplated that this work was going to be done by salaried employees of the office. I mean, there's no indication that the office had the capability to do that. Well, Your Honor, but in 18... It seems perhaps more likely that at that time that the expense involved was the retention of outside counsel. Perhaps, Your Honor, but by borrowing the language expenses that Congress had used three years earlier in describing the salaries of PTO staff, that those expenses would have been included... It would include salary. Salaries as well, yes, Your Honor. And there's no dispute in this case, at least, that expert fees are included in this statutory provision. Yes, Your Honor. And does the PTO have a contract? Do they contract with outsiders? How is that financially done? Yes, Your Honor, the PTO would retain outside counsel, as Nanquist did here, and then... You don't mean outside counsel, you mean... Outside experts, yes, Your Honor. Thank you for that clarification. Is there a prevailing party status required for the expert payment? Payment fees by expert witnesses? No, Your Honor, and as we... So this statute, at least in this context, is loser pays even for expert witness. Expert witness fees. For costs. Yes, Your Honor, as we pointed out in our brief, expert witness fees are traditionally ones to which the American rule would apply, and there's no dispute that expert witness fees or attorney... But it's not loser pays, it's loser... Or winner pays, yes, Your Honor. So in this sense, it's not even the American rule or the English rule applies. It's something different. That Congress made clear that when loser draw, the plaintiff who has availed itself of the opportunity to come into court with all of the advantages that the 145 proceeding conveys, pays all of the expenses... What about the overlay of the constitutional right to petition the courts? Your Honor, the... And the access to courts issue. The access to courts issue, there is nothing about the expenses provision that prohibits access to the courts, and every plaintiff has, in the usual course, the right to proceed before this court in a 141 action. So that overlay is of no moment with respect to... But one way or the other, a 145 action is a civil court action, correct? Yes, Your Honor. I wanted to make sure you weren't arguing something different to that. No, Your Honor, and I appreciate the opportunity to clarify that it is an action in district court with all of the advantages and all of the expenses that that requires. How did you calculate the attorney's hourly fee rate? The hourly fee rate in this case, we submitted the annual salaries of the attorneys in this case and divided that by the proportion of the hours they would expend in a year that were devoted to this one... How do you know how many hours they would expend in a year? It's calculated by the number of hours that a PTO attorney is paid for each day. I believe it's 8.5 hours a day and adjusted for vacation, I think. So if they happen to work more hours that year, then their billing rate is less? Yes, Your Honor. So if they work, say, 3,000 hours, then their billing rate would be $75 or something along those lines. Is that correct? Yes, Your Honor. I believe that that math is correct. Except you just explained that they only keep time for 145 actions, but not the other matters they work on. So how do we know how many hours... I appreciate the opportunity to clarify that, Your Honor. The contemporaneous detailed billing records are with respect to 145, but they do keep time sheets with... do time accounting with respect to other cases. Is it your view that the expenses of this appeal should be payable, including the salaries of PTO employees who might be sitting here? The D.C. Circuit has held that expenses of an appeal are reasonably included in expenses of the proceeding under 145, so we think that those... that a court could reasonably construe those. We've not sought those here, Your Honor. So you're saying that in language in the statute that says, this proceeding, it's not limited just to the 145 action at the district court, but also includes this appeal and maybe a Supreme Court appeal? Your Honor, the D.C. Circuit found that the language would permit expenses related to an appeal, but again, the PTO is not seeking those here. Why? You, again, don't have discretion under the statute. If you believe those are expenses included within the statute, you shall receive them. You don't have the discretion. So if they're within the statute, you have to get them. I mean, you are agents of the taxpayers. Yes, Your Honor. You don't have the right to waive them. And that's why we're here today, Your Honor, is to establish the principle that PTO can recoup all of the expenses of the proceeding, and we've sensibly started... But you just suggested to two members of this court you don't intend to seek all the expenses of the proceeding because it is the PTO's view that the appellate attorney's fees here and possibly before the Supreme Court would be included, but you've decided not to seek them. Yes, Your Honor. We, in this case, I wanted to clarify the record that in this case we have not. The PTO sensibly sought to establish the principle that it could claim all the expenses of its proceeding, all the expenses of the proceeding, by pursuing the expenses that are the easiest to establish. Well, you mentioned that you're relying on the D.C. Circuit. That would not be binding on us. That's right, Your Honor. It would be for the Circuit to decide whether or not excluding the proceeding included or excluded. Yes, Your Honor. Doesn't your argument also require an interpretation of the proceeding? I mean, earlier you said the proceeding doesn't include examination that occurs before the district court action, but now you're saying it would include any appeal that occurred after, including at the federal circuit and any potential action in the Supreme Court. How do you define the proceeding to include that? I mean, I don't think that the district court, the D.C. District Court, has defined the proceeding. What language is it that you're relying on that the D.C. District Court defined? Your Honor, in the Robertson case, the D.C. Circuit considered whether certain printing expenses related to the appeal were expenses of the proceeding under 145. But that is of no moment here, Your Honor, because the proceeding that PTO is claiming and that is indisputably the proceeding described in Section 145 is the proceeding in district court, all of the advantages that come with that and the consequences. Can I ask you another question, which is, are you aware of any other statute that shifts the salaries of an agency's attorneys onto the party who brought proceedings challenging the agency's decision? I'm not aware, Your Honor. That's one of the very unique features of this statute that the Fourth Circuit relied on in concluding that Congress, when it provided expenses, win, lose, or draw to be recouped by the agency, that Congress was clear that it meant all of the proceedings. To take the unusual step of requiring a plaintiff to pay all of the expenses, regardless of its success, was an indication that Congress meant what it said, all expenses. That includes expert witness fees. Your view is that the American rule doesn't even apply because these are just personnel expenses and you're not talking about attorney's fees. Then why don't you then take a prorated proportion of all of the overhead? So, you know, every time the PTO provides cars for people, its employees to go places, or every time the PTO contributes to health benefits or any other overhead that is used, why isn't that all factor? Your Honor, that might sensibly be part of the expenses of the proceeding, and that is not unusual, Your Honor. In an attorney's fees case, private attorneys would claim benefits and even a profit margin in those cases. When a PTO applicant proceeds before the PTO, those expenses include a prorated share of the things that you're talking about. But I've never seen corporate overhead or law firm overhead factored into attorney's fees in attorney's fee applications. Well, Your Honor, this court discussed the issue in Rainey when it was talking about the rates that salaried union attorneys could charge under attorney's fees provision and noted that proper cost accounting might include those types of overhead that are normally baked into a private attorney's attorney's fee. And it's not unusual that that would make sense, that that's how private law firms recoup their fees. So speaking sensibly, taking it back to the person who works extra hard is worth less than by your rationale the person who only works half-time is worth twice as much, right? So the person who only works 500 hours a year is worth four times as much, and you couldn't possibly fire them because they're worth four times as much. Well, Your Honor, you're pointing out that plaintiffs get a good deal with the PTO attorneys at their hourly rates. But to the extent that there are concerns with particular claims in a particular case, the district court would sensibly review those for reasonableness. To what extent is your budgeting limited or applicable to GAAP, generally accepted accounting principles? To what extent? Your Honor, my understanding of the GAAP is that that applies to private corporations, and so the PTO adheres to similar accounting principles that apply to government agencies. I'm not familiar with the intricacies of the difference between the two, but they apply normal accounting principles that apply to... Okay, you've eaten all your rebuttal. We'll restore two minutes for rebuttal while we're here on the other side. Thank you. Thank you. Good morning. Thank you. May it please the Court, on behalf of Nanquist, Morgan Chu of Varela Manela, good morning. The key question before the Court... So, Mr. Chu, what is the purpose of the expense provision in Section 145? I'm sorry. I didn't hear the question. What is the purpose of the expense provision in Section 145? What do you understand that Congress was concerned about? What was the purpose of the statute? Right, so let me address my understanding of the 1839 statute, what's included in expenses and what's not included in expenses. So, at that time, according to certain... I think I'm asking a little bit different question. Why did Congress adopt this unusual provision, which even under your view would include payment of expert fees and other fees which don't usually fall within the definition of costs? What was the purpose of this? Why was Congress providing that the applicant who sued for a bill in equity had to pay the expenses of the patent? What was the objective? What was the purpose of that? We don't know. We didn't see anything in the legislative history that explained it. We do know that at that time, at approximately that time, there were legal dictionary definitions that dealt with expenses or costs. And let me give you an example. This wasn't briefed by the government and it wasn't briefed by Nanquist. So you have no view as to what the purpose of the statute was. Well, it was to shift expenses to the patent applicant who pursued 145 actions. That's clear on its face. On the underlying question of why did Congress intend to do that, I don't know the answer to that question. If I can return to the dictionary definition, I want to give credit to the amicus brief by the Intellectual Property Owners Association because they refer to a dictionary definition not cited by the parties. There was a James Wishaw, W-I-S-H-A-W, who in 1829 published a new law dictionary and it was defining a Latin term. I will butcher a Latin pronunciation but it reads something like expenses litis, L-I-T-I-S. The literal translation in Latin to English is litigation expenses. So highly relevant. And the definition in essence is costs that are allowed in a suit to a plaintiff or a defendant who is recovering in that litigation. So your view is that the statute expenses limited to traditional costs? Well, we're focused on whether attorney's fees are, but yes, that is the starting place in terms of costs at that time. So the award of expert fees would be outside the scope of costs, right? Well, we didn't address that exactly in this case because the key question was a matter of attorney's fees, but there is another dictionary definition that is slightly different. But expert fees are not part of costs. So if your view is it's just costs, then expert fees wouldn't be included, right? So most courts today in the ordinary... No, no, try to answer my question. Yes. Isn't that right? That if it's limited to costs, it wouldn't include expert fees either. If I accept a modern definition of costs as applied today, that's correct. What about attorney's fees? How would you define that today? I spent over 30 years in the private sector, and attorney's fees always had a profit built into it, correct? Is that your experience? Private law firms would like to think there is a profit built into it, but I can tell you that many private law firms don't have a profit built into it. And the ones that don't, they fail because they're not covering all their expenses. Well, the concept really is reasonable attorney's fees normally. So it's reasonable whether there is or isn't a profit. So we're not looking to whether there is a profit. So how are attorney's fees accounted for in a law firm? Are they the fees themselves? Are they a profit? Is it treated as income? Or is it treated as an expense? Just the fee facts. Income. It's revenue. And some matters by themselves are not profitable, and other matters are profitable. So I want to go to this other dictionary. So the charges or the expenses for staff lawyers that don't have income, that don't have a profit attached to it, there's something different than what constitutes attorney's fees, right? I can't address the government. I can address it from the private sector. Sometimes we employ people who are law school graduates and members of the bar. And depending on the arrangement with the client, they are sometimes simply a pass-through cost. There is zero profit. Whatever we pay them is what we're reimbursed by the client. And they're treated as an operating cost. We bill the client for their time, and they are usually paid for their time, but it's just a pass-through. Okay? So going back to the key question, which is, what did Congress intend in 1839? There is another dictionary definition. Again, a shout-out to the IPO brief. The two cases I've mentioned, the first one and this one, are I think at page 12 and 13 of their brief. There is the first edition of Black's Law Dictionary. It's 1891. It's the first edition, however, and it also defines that same term, the Latin term, expenses litis. And it says, in essence, costs or expenses of suit usually awarded to the successful party. So between 1829 and the 1891 Black's Law Dictionary, there's great consistency. The second definition said expenses or costs or expenses. So your theory is that expenses means traditional costs. Yes, and I think Judge Stoll's dissenting opinion cited three contemporaneous dictionary definitions that stand for the proposition expenses are included in costs, and costs are included in expenses. Two of the definitions were from 1830 and one was from 1856. In sharp contrast to the government's argument based on Wright and Miller from the last decade or two or the last edition of Black's Law Dictionary. Again, what we're asking is what did Congress intend? And what the Supreme Court has taught us in Baker-Botz, in Alyeska, and in other opinions, if there is a departure from the American rule, it must be, this is in quotes, specific and explicit. But it doesn't have to use the word attorney's fees, right? It does not have to use the word attorney's fees. It could say compensation for members of the solicitor's office, compensation for the ---- Well, let me ask you. If you're sitting there in Congress and you're trying to craft an unambiguous provision that would allow for the personnel expenses, would it be sufficient in this provision to say all of the expenses of the proceeding, including the personnel expenses? Would that be sufficient? No. No. Not at all. And Congress had that opportunity. Congress was engaged in an overhaul of the entire Patent Act leading up to the 2011 enactment of the America's Invent Senate. So they were shifting more than they had in the past the responsibility for being completely user-funded. At that point in time, either interested groups, including the Patent Office, or anyone else, or members of Congress could have said, we've got to help them out. Well, why wouldn't it be sufficient if it's said explicitly, including personnel expenses? Because the general rule from the Supreme Court is against the background of the American rule, which has been in place since 1796, and Congress, I think, would have the wisdom to say that it shifts attorneys' fees, including inside attorneys of the Patent Office, and then maybe... Well, I thought we agreed that you don't have to use the magic words, attorneys' fees. So tell me how you would say it to be clear without using the word attorneys' fees, because we agreed that that was not necessary. Lawyers working on the case from the solicitor's office. So it would be all of the expenses of the proceeding, including the... What's the language you're giving me? Well, I would start with attorneys' fees, because that's the major change. I would say they would be awarded... But follow me for a while. Let's assume that, and I thought we agreed, that attorneys' fees, the word attorneys' fees, doesn't have to be in it. So if you're sitting there in Congress, start with all of the expenses of the proceeding, comma. What would we have to say, including what? Okay. I would say it in the following way. Quote, including without limitation the time spent by lawyers working on the particular matter from the solicitor's office, since I'm getting to draft this statute, I would also say, and outside counsel, allowing for situations in the future. That would be specific and explicit under Supreme Court precedence. That's one thing they have to do. It's kind of an awkward statute. They have to draft it with that level of detail? Yes. Yes, because they are... Isn't that just a way of saying attorneys' fees in other words? I mean, you're saying... Yes. Well, but you're not accepting the chief judge hypothetical that you don't have to use magic words. Changing the words attorney fees into expenses of lawyers is not fully accepting or hypothetical. So assume that you don't have to use any magic words that designate and call out attorneys, lawyers, counselors, or anything like that specifically. What else would be sufficient? Well, there are two points. There are lots of other ways to describe the compensation of someone doing legal work other than the ones we've already mentioned. That was my answer to the chief judge's question. So would it be including expenses associated with the compensation of attorneys, salaried attorneys, in the solicitor's office? Yes. But wouldn't that make the word all superfluous? No, not at all. In fact, there's a Supreme Court decision that looks at a similar word. See, all is a catch-all word, but if you think about it, it really doesn't change it. If someone says, I'm going to pay you all the expenses, that's not different from saying, I'm going to pay you all the expenses. In Flora v. U.S., Supreme Court 1960, I believe, there was a catch-all phrase that was any, and then a string of words. And the Supreme Court says, well, that's a catch-all phrase, but it doesn't tell us what it catches. So, too, in the difference between expenses and all expenses. But back to the... I'm having a problem here, because in 1839, there was no solicitor in the patent office. I'm sorry, sir. In 1839, there was no solicitor in the patent office. There weren't any lawyers in the patent office that handled litigation. So how, sitting there in 1839, would you draft this statute to include outside counsel fees without mentioning attorney's fees? So, two points. First of all, scouring all of the attorney's fees statutes in the United States, they all mention attorney's fees in some way, and how I would draft it. So, attorney, tell me how you would draft it in 1839 without mentioning attorney's fees. Persons providing lawyer services who are hired internally or externally by the patent office, and there was something very close three years earlier, in the 1836 statute. It referred to the compensation for the personnel of the patent office. Now, three years later, that was, I think, Section 9 of the 1936 Act. There is this new section, which is Section 16 of the 1939 Act. So just a different section, and it doesn't refer to reimbursement by a private party for expenses of personnel in the patent office. That juxtaposition is strong support that Congress was not intending to shift attorney's fees or to shift the internal personnel expenses at all. Mr. Chu, is it your position that the all-expenses language is clear and doesn't include attorney's fees, or that it's ambiguous and therefore, under the Supreme Court precedent, doesn't include attorney's fees? You can say both and the alternative, by the way. I think it is, at a minimum, ambiguous, particularly in the context of an argument without regard to shifting attorney's fees. So if you just have a bunch of very smart people who are grammaticians arguing about whether expenses does include it, I would say it's ambiguous. And therefore, we have to follow the Supreme Court precedent from Malieska in Baker v. Jackson. Why would it be ambiguous? If you believe that the magic words don't have to be said to be included, then why is it ambiguous? Let me be real clear on how I answered that earlier question. You don't have to use... You did concede, or you did say, that the words attorney's fees do not have to be included in the word expenses in order for them to be included. Correct. That's how I answered that exact question. Okay. But what I'm trying to explain is that other words could be used. I think I made that clear. But it's got to tell us congressional intent on a specific and explicit basis under Baker, Watts, and Malieska. So let me see if I understand this. My understanding, and tell me if I'm wrong, is that nobody has identified any statute that uses generic language like expenses or costs without a parenthetical saying including attorney's fees that has been interpreted to cover time for lawyers. The principle that there are no magic words doesn't go further than to say there are many different words you can use to refer specifically to time for lawyer services. It doesn't mean that generic concepts without something more specific using some words referring to lawyer's time are unnecessary. Yes. Okay. Exactly. And that every statute that shifts attorney's fees, every statute that's been interpreted to shift attorney's fees, to save the litigation recently started by the patent office, has interpreted a statute that specifically says attorney's fees or uses words very, very close to that so there's no ambiguity. Is it right that nobody has identified statutory language that has been construed to cover payment for lawyer's time that uses terms only like expenses or costs without further language pointing to time for attorneys? I'm not remembering as I'm sitting here any example of that. Yes. We scoured the case law to the beginning of the United States to see if there was any such case. We could find none. The patent office and the Department of Justice, I assume they did the same thing. They could find no such case law. But are we really dealing with attorney's fees here? Yes. Are these attorney's fees? A while ago you said that attorney's fees are budgeted or they fall under, let's say GAAP, as a general selling administrative expense. They have a profit margin. They're viewed as income. That's attorney's fees. Actually, I was intending to communicate something slightly different. So in my example, if we hire... Petitioner. Yes. Attorney's fees, that which you charge your client. Yes. Does that contain a profit section to it? Sometimes yes and sometimes no. The example I gave earlier, where we have an agreement with a client, we employ attorneys, and let's say it's a bankruptcy matter and we're entitled to... Let's say that it didn't, that none of your attorney's fees included a profit margin. Would you be profitable? You'd either be a non-profit organization or a governmental agency at that point. Actually, not to spend too much time on the economics of a law firm, but a certain group in a law firm, a certain practice area, may not be profitable at all. Or work on a certain client may not be profitable at all. Well, my experience in the private sector, and I did spend quite a bit of time in directing and managing a law firm, is that you build attorney's fees in order to capture all your costs plus a profit margin. Yes and no. It varies from client to client. Sometimes the lawyers really want to do some work because it's very interesting as a legal matter, and we say okay as a firm because we're professionals. We do more than just try to make a profit. Often we do like to make a profit. Pro bono cases. We take on pro bono cases. We may get paid nothing, but if we have the ability to submit a petition for attorney's fees, we will say the customary rates that we are paid is X dollars an hour. So it really runs the gamut here. Can I ask you this? My understanding is that although the various remedial regimes changed over time, particularly in the 19th century, that from the beginning of this provision, the suit in equity was an alternative to some other kind of, I'm going to use the term loosely here, judicial review, at least starting in 1839. Initially not to court review, but rather individual judge review of the chief judge or chief justice of the District of Columbia. But does that make this a distinctive context, namely that the suit in equity here was always not the only remedy that a disappointed applicant could seek. There was always something else, including, at least I think since 1839, I may be wrong about this, from a judge. The answer to the exact question is I do not know. I do believe that in other federal statute a disappointed litigant might have different ways to seek review, but that doesn't address the exact question. The exact question is what was the congressional intent in 1839 when it remained unchanged, including through 2011 with the AIA. And I want to remind, I'm sure everyone on this court knows, there's not only the 285, which specifically refers to attorney's fees shifting for exceptional cases. There are three other sections of the AIA that specifically refer to attorney's fees. Two of them incorporate or refer back to 285, and there's another one when basically a less than honest person is trying to sell certain inventorship services. But in each of those four instances, in the AIA as of 2011, attorney's fees are specifically called out. So we have this long history where Congress has never passed another statute before or after 1839 that uses broad words like expenses or costs to mean attorney's fees. No court has ever interpreted any federal statute that way, with the exception of some decisions that the Patent Office has been seeking in the last few years. Indeed, the Patent Office has taken a contrary position in prior litigation. So one case is Robertson v. Cooper. The exact question was whether the Patent Office could get reimbursement for trial expenses because a lawyer had to attend an out-of-state deposition. The district court said no. It's up on appeal. And the patent applicant, who's trying to support the decision of the district court, says, well, this can lead to mischief and folly and abuse. The word abuse is actually used. And then specifically argues that what the Patent Office might do is begin to charge patent applicants for the fees of their solicitors. And what does the government say in response? Oh, no. That is so remote that it should not be taken seriously at all. So that's been the Patent Office's not only policy by its inaction, despite the mandatory, not preparatory language, which uses shall in the statute, but this is also contrary to what they've argued in prior cases. Mr. Chu, not to get into your firm's practices, but just in general, your knowledge of the private bar, do private law firms follow the government model in which people who bill less hours, let's call them senior partners, get charged more for each hour? It's exactly the opposite. And it doesn't matter what category of lawyer you are, the first junior lawyer, five years out of school, or a partner. We value a lot of other things, too. Creativity and talent and writing skills and mentoring people. But if everything else is equal, we like people to work harder than less hard. You could apply the same question to members, not of this bench, but other benches, and no one would say that a judge on some other bench who doesn't work very hard is somehow much more valuable. Thank you very much, Your Honors. Thank you. Your Honors, just a few points on rebuttal. Judge Wallach, I've been informed that, in fact, PTO attorneys cannot record over time. So the notion that the numbers would be distorted in the way that you described is unlikely. And in any event, courts routinely deal with claims by a salaried counsel under attorney's fees provisions and can sort through any sort of distortive effects. Do you keep track of whether they work up to the standard? The quality of their work? No, just the amount of hours. In other words, if somebody only comes in and puts in 1,000 hours, you keep track of that, don't you? Yes, Your Honor, and they would take leave. And so that would be reflected in the timesheet submitted. Your Honor, the notion that... Would be reflected in the billing value submitted? Would be reflected, yes, Your Honor, in the numbers, as well as it would be adjusted for the hourly wait would reflect, I think, annual leave or any other sense in which an attorney was not performing work. But again, those are mechanical questions that shouldn't cause this court any pause in affirming the general principle. When did the government determine that this provision included attorney's fees? When did the government...? You said that for 170 years we didn't seek them. Yes, Your Honor. But what that doesn't tell me is, did you, during that 170 years, believe that you were entitled to seek them but you chose not to? When did the government...? There has to have been an epiphany, right? Because I set up the parade of horribles. Otherwise, you're not collecting money the taxpayers are owed, and I tend to think that you're more of a fiduciary and fiscally responsible than that. So when did the government conclude...? Your Honor, as I explained, that after the passage of the AIA and the anticipated increase in the expense after the Supreme Court's decision in Hyatt, the PTO took a look at that. They took a look at it. That's not answering my question. Is that when you concluded that we can seek attorney's fees under this provision? That is when we came to the decision that we would do so. I really can't speak to what members of the PTO... So you can't tell me, as you stand here, that for 170 years the agency did in fact or did not in fact believe it was entitled to attorney's fees? I can tell you two things, Your Honor. One is that we never disclaimed the authority, and two, that what we did seek are attorney travel expenses and expert witness fees that are expenses that the American rule would apply. So plaintiff can't explain why the American rule would preclude PTO from seeking its personnel expenses and yet permit PTO to seek the expenses for its expert witnesses that it's claimed in this case or the travel expenses for PTO attorneys to travel to defend depositions or take depositions. Do you have a response to Mr. Chu's reference to that Margretson v. Cooper case? The Robertson v. Cooper case? Yes, Your Honor, that's the case that I'm talking about in which the principle was established that PTO can claim its travel expenses for attorneys. What about where the government... Mr. Chu was saying that the government in that case said that that possibility that the PTO would try to seek fees was so remote that it can't be taken seriously. Your Honor, that statement was in the government's brief. There the government was seeking travel expenses of its attorneys. But that's not what Mr. Chu said. He said the question was raised of attorney's fees and the government said it never happened. Your Honor, it said it was so remote it didn't need to be considered and here we are at that remote day. The government has evaluated its authority under Section 145 and has determined that it can seek its personnel expenses and it's doing so here, Your Honor. Okay. Time has expired. Thank you. We thank both sides. The case is submitted. We'll take a recess for about 20 minutes or so to hear the next case. All rise.